IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IWONA JODLOWSKA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SOAR CORP. | : | NO. 13-2845 |

MEMORANDUM

Bartle, J.                                                                     February 20, 2015

        Defendant Soar Corp. ("Soar") has pending before the court a motion for "a judgment NOV or for a new trial."

        Plaintiff Iwona Jodlowska has sued Soar, her former employer, for race discrimination, gender discrimination and hostile work environment in the form of sexual harassment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq. At the close of the plaintiff's case, defendant moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure on the ground that plaintiff had presented insufficient evidence to prove her claims. The court granted the motion as to plaintiff's race discrimination claim but otherwise denied the motion. Soar thereafter presented its witnesses in defense of the claims remaining against it, and the case as it then existed was submitted to the jury. In answers to

special interrogatories, the jury found that: (1) plaintiff was subjected to a hostile work environment; (2) defendant had not proven that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities to prevent sexual harassment; (3) defendant unlawfully retaliated against her; and (4) defendant had not unlawfully discriminated against her on the basis of sex by terminating her employment. The jury awarded plaintiff $35,000 in back pay and $50,000 in compensatory damages for a total of $85,000. The court entered judgment in this amount in favor of the plaintiff. The defendant did not renew its Rule 50 motion at the close of the evidence but did timely file the pending post-trial motion after the judgment was entered.

I.

Plaintiff first contends that since Soar did not renew its Rule 50 motion at the close of the evidence, its post-trial motion for judgment as a matter of law is limited to what occurred during plaintiff's case at the trial and cannot rely on what transpired during defendant's case.

Rule 50 provides in relevant part:

(a) **Judgment as a Matter of Law.**

    (1) **In General**. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find

>     for the party on that issue, the court may:
>
>     (A)  resolve the issue against the party; and
>
> ...
>
> (2) **Motion.** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.
>
> (b) **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59....

Under Rule 50(b), Soar, within 28 days of the entry of judgment, is permitted to file a "renewed motion for judgment as a matter of law." (emphasis added) While Soar met this deadline, its motion must necessarily be confined to the legal issues it raised when it made its pre-verdict Rule 50 motion and is limited to challenging the evidence in the record at that time. As the Advisory Committee Note to the 2006 Amendment to Rule 50 explains, "Because the Rule 50(b) motion is only a

-3-

renewal of the preverdict motion, it can only be granted on grounds advanced in the preverdict motion." See Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co., 381 F.3d 811, 821 (8th Cir. 2004); Zacher v. Lee, 363 F.3d 70, 74 (11th Cir. 2004). Thus, defendant cannot rely on the testimony of the witnesses it called or the exhibits it introduced after the plaintiff rested.

II.

Defendant contends that there was insufficient evidence for the jury to find in favor of plaintiff on her retaliation and sexual harassment claims. We must review the evidence and draw all reasonable inferences in a light most favorable to the plaintiff, the verdict winner. Glenn Distrib. Corp. v. Carlisle Plastics, Inc., 297 F.3d 294, 299 (3d Cir. 2002). In doing so, we will consider only the evidence before the court when defendant made its Rule 50(a) motion at the end of the plaintiff's case. As noted above we will not take account of what defendant's witnesses said.

Plaintiff was first hired by Soar as a part-time drug and alcohol counselor in March 2011 and began working full-time in that capacity on August 1, 2011. Her supervisor as a full-time counselor was initially Jonathan Marino but in the middle of September 2011 Caroline Roy assumed that responsibility. Shortly before plaintiff started on a full-time basis, Soar hired Robert Stringer as its Executive Director.

As was customary at Soar, plaintiff was placed on two months' probation at the start of her full-time employment. At the end of this period, at a meeting with Mr. Marino and Ms. Roy, her probationary period was extended for an additional 30 days. During this time, she was not eligible for certain benefits and could not accrue vacation or sick time. The memorandum extending her probation listed Stringer as the author. Plaintiff denied the validity of the reasons set forth in the memorandum for the additional period of probation. Thereafter, Stringer yelled at her when she forgot her keys and again in an incident in a hallway of Soar's offices. Stringer also denied her a training opportunity after offering it only minutes before to another counselor who declined it.

Plaintiff, an immigrant from Poland, testified extensively about the hostile work environment and harassment by Stringer. He leered at her, told her he liked it when she wore skirts or dresses and asked her why she was not doing so when she was not attired in such clothing. He commented on how beautiful she looked in a skirt or dress and was going to add this as a job requirement. In addition, he said to her on a couple of occasions how lucky her husband is to be able to make love to her all day long and on one occasion made reference to her husband doing so on Labor Day weekend. He commented on her beautiful legs and once took her face in his hands and asked her

why she was so pretty.  This all occurred for four-to-six weeks and stopped sometime in September.  The incidents occurred on a near-daily basis throughout this period.  Many of these encounters occurred after hours when there were few other people in the building.  While Stringer was engaging in this conduct, plaintiff made it clear to him that his behavior was unwelcomed.  During this timeframe, Stringer also informed her that he was powerful and could hire and fire anybody and that she should move to a part of the building near him.

Plaintiff advised her supervisor, Ms. Roy, of Stringer's conduct in November 2011.  Not long thereafter, on December 7, 2011, Plaintiff was suspended from her job allegedly for planning to steal Soar property in the form of confidential client information.  She denied ever planning to steal property or disclosing any confidential information.  On December 12, she was called to a meeting with Mark Besden, Regional Director of Soar.  Stringer and Marino were also present.

At that meeting, Besden discharged her with input from Stringer.  Initially, Besden intended to take the matter up with Soar's Board of Directors, but Stringer stated, "Why prolong the pain?"  After Stringer's comment, Besden changed his mind and terminated her on the spot.  A termination letter explained that plaintiff was being fired for attempted theft and for inappropriately discussing internal employment affairs with a

-6-

patient.  Plaintiff denied these accusations at the meeting and at trial.

For a plaintiff to prevail on a sexual harassment claim, she must prove, among other things, that "the harassment [was] so severe or pervasive that it alter[ed] the conditions of the victim's employment and creates an abusive environment." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). Harassment is severe or pervasive when, under the totality of the circumstances, a reasonable person in the plaintiff's position would find the work environment to be hostile or abusive such that it alters the terms or conditions of employment. Jensen v. Potter, 435 F.3d 444, 451, 452 (3d Cir. 2006), abrogated in part as recognized by Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006). The court gave detailed instructions to the jury on hostile work environment and sexual harassment to which defendant did not object.

The evidence supported the jury's verdict in favor of plaintiff.  Stringer's sexually suggestive conduct happened on a near-daily basis for four-to-six weeks, and plaintiff testified to the severely detrimental effect this had on her.  Under all the circumstances, the jury could reasonably find that Stringer, the Executive Director at Soar, engaged in severe or pervasive sexual harassment that created a hostile work environment in

violation of Title VII and the Pennsylvania Human Relations Act. Under the law, Soar is vicariously liable for his conduct.

Defendant argues that plaintiff's claim is barred by what is known as the Faragher defense, outlined in Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998). On this issue, the defendant has the burden of proof. See id. at 807-08. In Faragher, the Supreme Court ruled that an employer, under certain circumstances, cannot be held liable if plaintiff failed to take advantage of procedures it had in place for its employees to complain about work-related behavior, including allegations of sexual harassment and hostile work environment. The Supreme Court explained in Faragher:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Id. at 777-78.  Plaintiff, however, was not aware of the availability of any such process at Soar until late-October 2011, approximately a month or so after the harassment had stopped.

Soar relies on the testimony of its own witness to support this affirmative defense.  This proof is unavailing here since defendant filed its Rule 50(a) motion at the end of plaintiff's case and before it presented its own evidence.  Its currently renewed motion for judgment as a matter of law can only rely on evidence in the record when the original Rule 50(a) motion was made.  Focusing solely on the evidence presented in the plaintiff's case, defendant's argument for judgment as a matter of law based on the Faragher defense clearly fails.[1]

III.

Defendant also contends that there was insufficient evidence for the jury to find in favor of plaintiff on her retaliation claim.  Again, we look simply to the evidence

---

[1] We further note that Soar asked its employees to report harassment either to its Board of Directors, the existence of whom plaintiff and other employees were not aware, or to human resources.  However, the human resources person to whom plaintiff would have had to report her complaints was none other than the daughter of Robert Stringer.  As such, even if we were to consider the defendant's evidence, there was evidence for the jury to find that Soar failed to take reasonable care to supply preventive or corrective opportunities in that its harassment policy asked plaintiff to confide in the daughter of the alleged harasser.

introduced in plaintiff's case before defendant moved for judgment as a matter of law under Rule 50(a). To establish retaliation, a plaintiff must prove that she engaged in protected activity, the employer took adverse action against her and that a causal link exists between the protected activity and the adverse action. Daniels v. School Dist. of Phila., No. 14-1503, --- F.3d ---, 2015 WL 252428, at *7 (3d Cir. Jan. 20, 2015). A formal charge of discrimination is not necessary to establish that protected activity has occurred. Id.

There was evidence that plaintiff engaged in protected activity. She complained to Stringer himself at the time of his sexual harassment. Plaintiff clearly had an objectively reasonable belief that Stringer's repeated sexual comments and one instance of unwanted physical contact constituted unlawful discrimination. The plaintiff has also shown adverse action in the extension of her probationary period on September 28, 2011, and in her discharge on December 12. Taking the evidence in the light most favorable to plaintiff, Stringer was involved in these activities. Finally, she demonstrated a causal connection between her protected activity and the employer's adverse actions. See id. at *10; LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). The short interval of just a few weeks between the protected activity and adverse actions that occurred here is "unusually suggestive" of the

necessary causal connection.  See LeBoon, 503 F.3d at 232.
Plaintiff also testified to an intervening pattern of antagonism
towards her by Stringer after she rebuffed him.  Id.

  The evidence before the court at the time of Soar's
original Rule 50(a) motion was sufficient to prove retaliation.

IV.

  Finally, Soar argues that it is entitled to a new
trial because the court did not delay the trial so that its
witness, Charles Mastantuono, who was ill, could be called as a
witness on the retaliation claim.  Mastantuono was a counselor
at Soar.  The court advised defense counsel that it would permit
the taking of his videotaped deposition.  The court was never
informed that Mr. Mastantuono was unable to sit for a trial
deposition.  For whatever reason, defendant decided not to
pursue the option offered by the court.  In any event, his
deposition had been taken during discovery, and the court
permitted relevant portions to be read to the jury pursuant to
Rule 32(a)(4) of the Federal Rules of Civil Procedure.  Soar has
not set forth any valid basis for a new trial because of the
absence of Mr. Mastantuono.